IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENNETH WARREN,                          6:12-CV-01528-BR

          Plaintiff,                     OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

          Defendant.

BRUCE W. BREWER
P.O. Box 421
West Linn, OR 97068
(360) 688-0458

          Attorney for Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**SARAH L. MARTIN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3705

          Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Kenneth Warren seeks judicial review of a final decision of the Commissioner of the Social Security Admini-stration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** for the calculation and payment of benefits.


## ADMINISTRATIVE HISTORY

     Plaintiff protectively filed his applications on May 21, 2009, and alleged a disability onset date of May 8, 2009, due to

mini-strokes and high blood pressure.  Tr. 91-93, 112.[2]

Plaintiff's applications for DIB and SSI were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on February 17, 2011.  Tr. 336-64.  At the hearing Plaintiff was represented by an attorney and amended his alleged onset date to December 1, 2009.  Tr. 340.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on March 18, 2011, in which he found Plaintiff was not disabled because even though Plaintiff could not perform his past relevant work as a loader/unloader, delivery driver, or green chain puller/cleanup, Plaintiff was able to perform other work including bakery-line worker, dealer account representative, and surveillance-system monitor.  Tr. 28. That decision became the final decision of the Commissioner on July 11, 2012, when the Appeals Council denied Plaintiff's request for review.  Tr. 6-8.

On August 23, 2012, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born on May 5, 1968, and was 42 years old at the time of the February 2011 hearing.  Tr. 27.  He has a ninth-

---

[2] Citations to the official transcript of record filed by the Commissioner on April 11, 2013, are referred to as "Tr."

grade education.  Tr. 27, 344.  Plaintiff has past relevant work experience as a loader/unloader, delivery driver, and green chain puller/cleanup.  Tr. 27, 137-41.

Plaintiff alleges disability due to neck and back pain, bilateral carpal-tunnel syndrome, and knee pain.  Tr. 159.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is

"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  It is more than a mere scintilla [of evidence]
but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d
at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful

activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,

at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9ᵗʰ Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9ᵗʰ Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9ᵗʰ Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged

in substantial gainful activity since his May 8, 2009, original onset date.  Tr. 22.

At Step Two the ALJ found Plaintiff has the severe impairments of lumbar spine spondylolisthesis without significant neural foraminal narrowing or spinal stenosis, cervical spine spondylosis, and carpal-tunnel syndrome.  *Id.*

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff has the RFC to perform light work including occasional handling and fingering, but is cannot kneel or squat and should avoid repetitive hand and wrist activities.  Tr. 24.

At Step Four the ALJ concluded Plaintiff is unable to perform his past relevant work.

At Step Five the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including bakery-line worker, dealer account representative, and surveillance-system monitor.  Tr. 28.

<u>**DISCUSSION**</u>

Plaintiff contends the ALJ erred (1) by failing at Step Three to find his impairments meet the requirements of a Listing; (2) by finding Plaintiff was less than fully credible; (3) by rejecting the opinion of Plaintiff's treating physician; and

(4) by rejecting the lay testimony.

**I.   <u>Step Three Severe Impairments</u>**

At Step Three the ALJ must determine whether a claimant's impairments meet or equal an impairment listed in "The Listing of Impairments" (Listings). *See* 20 C.F.R. Part 404, Subpt. P, App. 1.  The Listings describe specific impairments of each of the major body systems that "are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a).  Most of these impairments are "permanent or expected to result in death." *Id.*  "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.*  If a claimant's impairments meet or equal a listed impairment, he will be found disabled at Step Three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c).  A claimant must establish he meets each characteristic of the listed impairment relevant to his claim. *See* 20 C.F.R. §§ 404.1525, 416.925.  The claimant must establish the symptoms, signs, and laboratory findings "at least equal in severity and duration" the characteristics of a relevant listed impairment or if not listed, then to the listed impairment "most like" the

claimant's impairment.  *See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

The Listing most like Plaintiff's alleged impairments provides in relevant part:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>   A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> * * *
>
>   C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to am-bulate effectively, as defined in 1.00B2b.

## A.  The ALJ's Determination

At Step Three the ALJ found Plaintiff's impairments do not meet or medically equal a Listing and stated there "is no indication the claimant's spine disorders result in compromise of a nerve root or the spinal cord with associated signs and symptoms as set forth under section 1.04."  Tr. 23.

## B.  The Medical Evidence

On October 20, 2009, an MRI showed "moderate to severe right

10 - OPINION AND ORDER

foraminal compromise C5-6 bony foraminal and mild right lateral recess canal stenosis secondary to a combination of endplate ridging and disk protrusion.  No focal cord abnormality is seen." Tr. 204.

E. Reed Gurney, M.D., treated Plaintiff from June through October 2009 for possible transient ischemic attacks, hypertension, and dizziness.  He examined Plaintiff on October 23, 2009, and found the dizziness had "resolved." Tr. 198.  Dr. Gurney also noted the MRI scan showed some disc protrusion at C5-6, especially on the right foramen. Dr. Gurney stated Plaintiff wanted to return to work, and he released Plaintiff to full-time work on October 26, 2009.

On November 14, 2009, Raymond P. Nolan, M.D., Ph.D., performed an administrative examination of Plaintiff.  Tr. 216-18.  Plaintiff complained about numbness and tingling in his hands and reported his symptoms increased with the use of his arms and driving any distance.  He had pain with range of motion in his neck and got dizzy turning right or left.  Dr. Nolan noted Plaintiff was able to move from sitting to standing without difficulty, his gait was normal, and he was able to hop on either foot.  Plaintiff's upine straight-leg raising was 70 degrees right and left and his sitting straight-leg raising was 90 degrees bilaterally.  Dr. Nolan found Plaintiff had grip strength of 33 and 30 kg on the right versus 42 and 40 kg on the left.

Plaintiff is right-handed, and Dr. Nolan found slight bilateral weakness in Plaintiff's hands, which was more prominent on the right.  He found Plaintiff had a bilateral distal digital decrease in pinprick sensation in the calves of his legs.

Dr. Nolan diagnosed Plaintiff with "[c]lassical presentation for carpal tunnel syndrome with classical symptoms and classical findings.  Chronic neck pain with marked limitation of range of motion and alleged MRI abnormalities being offered as explanation for his arm symptoms."  Tr. 218.  Dr. Nolan opined Plaintiff "would want to minimize pushing and pulling activity involving his upper extremities and repetitive hand and wrist activities.  He should minimize activity of head movement." *Id*.  Dr. Nolan found Plaintiff was not restricted in sitting, standing, or walking, but he found Plaintiff was restricted to lifting/carrying 10 pounds frequently and up to 20 pounds occasionally.  He advised Plaintiff to avoid repetitive kneeling and squatting.

In May 2010 Miroslav Kavur, D.O., examined Plaintiff and found a "[g]ood range of motion."  Tr. 248.

On September 27, 2010, Carla Antola, M.D., examined Plaintiff to establish the care he might need.  Tr. 239. Dr. Antola noted Plaintiff had been off from work for about 18 months after being laid off.  Plaintiff complained about neck pain for the past one or two years, and Dr. Antola found positive

12 - OPINION AND ORDER

numbness and tingling through Plaintiff's arms and legs
bilaterally that could be exacerbated with shooting pain
depending on the position of the neck.  *Id.*  Dr. Antola also
found Plaintiff had decreased grip strength, slightly decreased
muscle strength in distal muscle groups, and decreased sensation
in both of his lower legs and both hands.

On October 11, 2010, Dr. Antola noted Plaintiff's symptoms
were unchanged as to the numbness of his arms and legs and
tension headaches.  Tr. 238.  An x-ray of Plaintiff's cervical
spine showed space narrowing on the right, especially at C5-6.
Dr. Antola referred Plaintiff to a neurosurgeon and assessed
Plaintiff as having "[n]europathic pain due to radiculopathy,
nerve compression."  *Id.*

On October 31, 2010, Plaintiff was seen in the emergency
room with complaints about left-sided neck pain extending to the
thoracic spine.  Tr. 298-99.  The range of motion of his neck was
decreased in all aspects due to pain.  Plaintiff also experienced
palpable muscle spasms and some muscle spasms of the low back.
Plaintiff's extremities, however, had good range of motion,
muscle mass, and strength; his deep tendon reflexes were +2/4;
and his gait was normal.  The diagnosis was mild fascitis of
cervical and thoracic spine, and Toradol, DepoMedrol, and Vicodin
were prescribed.  *Id.*

13 - OPINION AND ORDER

Plaintiff saw Dr. Antola again on November 3, 2010, and complained about back and neck pain with numbness and tingling. Tr. 236.  Dr. Antola noted Plaintiff had a history of radiculopathy with weakness in arms and legs (left arm greater than right, and right leg greater than left).  Dr. Antola also noted Plaintiff experienced muscle pain and weakness, joint pain, and headaches.  Plaintiff's strength was 4/5 on his left arm and right leg, straight-leg testing of Plaintiff was positive, and there was a slight decrease in his sensation in the lower leg. Dr. Antola reviewed Plaintiff's MRI and found it "shows stenosis and disc protrusion of L spine."  Tr. 237.

On November 17, 2010, a lumbar MRI showed Plaintiff had a "broad based disc bulge" at L5-S1 with no significant neural foraminal narrowing or spinal stenosis.  Tr. 242.  A cervical MRI showed Plaintiff had "degenerative change at the inferior cervical spine most pronounced at C5-6 with posterior osteophyte narrowing the right lateral recess at this level."  Tr. 243.

On December 23, 2010, Plaintiff was examined by orthopedist Scott Kitchel, M.D.  Tr. 307-09.  He found Plaintiff's straight-leg raise testing was negative bilaterally.  Tr. 309. Dr. Kitchel reviewed images and diagnosed Plaintiff with a grade 1 isthmic-type L5 on S1 spondylolisthesis.  He noted moderate disc degeneration at that level and concluded "[t]here is plain film evidence of neural foraminal narrowing" and the lumbar

14 - OPINION AND ORDER

lordosis is diminished.  Tr. 311.  Dr. Kitchel recommended "a good active therapy and exercise program" and reassessment of Plaintiff in six weeks.  Tr. 309.

### C.  Analysis

When there is conflicting medical evidence in the record, the ALJ's determination must be upheld.  *Vasquez,* 572 F.3d at 591.  Here there is evidence of both positive and negative straight-leg testing.  Tr. 237, 217.  In addition, Plaintiff has not identified evidence of a "limitation of motion of the spine" as required to meet Listing 104A.  As noted, Miroslav Kavur, D.O. examined Plaintiff in May 2010 and found a "[g]ood range of motion," and in December 2010 Dr. Kitchel performed a full lumbar spine examination, reviewed lumbar and cervical spine imaging studies, and found normal range of motion.  Tr. 248, 308.

On this record the Court concludes the ALJ did not err when he found at Step Three that Plaintiff's impairments do not meet or equal in severity a Listing because the ALJ provided legally sufficient reasons for doing so.

## II.  Plaintiff's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995).  The ALJ's findings must be supported by specific, cogent reasons.  *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998).

Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (*e.g.,* "record in general" indicates improvement) constitute an insufficient basis to support an adverse credibility determination. *Reddick* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ's credibility determination must be supported by findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

When deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms" (footnote omitted). *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged. . . ." *Bunnell,* 947 F.2d at 344 (quoting

> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799
> F.2d at 1407-08.  The *Cotton* test imposes only
> two requirements on the claimant:  (1) she must
> produce objective medical evidence of an
> impairment or impairments; and (2) she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*
> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282 (emphasis in original).  The medical

evidence is a relevant factor when determining the severity of a

claimant's symptoms.  *Rollins v. Massinari,* 261 F.3d 853, 856 9th

Cir. 2001).

Here the ALJ found the objective medical evidence did not

support the degree of limitation that Plaintiff alleged and that

Plaintiff was not credible to the extent that his allegations

exceeded his RFC.  Tr. 20, 25.  The ALJ pointed out that Dr.

Gurney released Plaintiff to return to full-time work in October

2009 after he had reviewed an MRI that showed Plaintiff had some

disc protrusion at C5-6.  Tr. 25-27.

The Commissioner argues Plaintiff's failure to complain to

Dr. Gurney about low-back pain supports the ALJ's conclusion that

Plaintiff's low-back pain was not debilitating.  The record,

however, reflects the ALJ did not rely on that fact, and,

therefore, it cannot be a clear or convincing reason for the ALJ

to have found that Plaintiff was less than fully credible.

The ALJ stated Plaintiff did not report to either Anton Lotman,

M.D., or Dr. Gurney that he had neck pain with movement and

17 - OPINION AND ORDER

dizziness when turning his neck.  Tr. 25.  Plaintiff, however, reported dizziness to Dr. Lotman in August 2009 when he turned his head, and he reported vertigo to Dr. Gurney in August and September 2009.  Tr. 199-201.

The ALJ also cited Plaintiff's inconsistent testimony.  For example, Plaintiff testified he quit working in May 2009, but he reported to Dr. Nolan in November 2009 that he had been laid off a few weeks before due to the economy.  *Id.*  Inconsistent statements are valid considerations when determining credibility.  *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ also noted Plaintiff failed to follow treatment recommendations.  Tr. 26.  Unexplained or inadequately explained failure to follow a prescribed course of treatment can cast doubt on the sincerity of a claimant's subjective statements of disabling symptoms.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ pointed to Dr. Kitchel's recommendation for therapy and exercise and Plaintiff's testimony that he had never engaged in those activities.  Tr. 26, 309, 348.  Plaintiff, however, argues he could not afford the therapy, and the record indicates "for some reason DOCS denied this [physical therapy] order."  Tr. 296.  An ALJ may reject a claimant's complaints of pain when they are inconsistent with the treatment received *unless* the record establishes the claimant could not afford the

treatment.  *Regennitter v. Comm'r of Soc. Sec. Admin.,* 166 F.3d 1294 (9th Cir 1999).

The Court finds on this record that the ALJ erred when he found Plaintiff was less than fully credible because the ALJ did not provide clear and convincing reasons supported by substantial evidence in the record for doing so.

### III. Opinion of Dr. Antola, Treating Physician

If there is not a conflict between medical-source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  More weight must be given to the opinion of a treating physician because he has a greater opportunity to know and to observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ must also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if one physician is contradicted by another physician, the ALJ may not reject the contradicted opinion without providing specific and legitimate reasons supported by substantial evidence in the record for doing so.

*Orn,* 495 F.3d at 632.  *See also Widmark,* 454 F.3d at 1066.  The opinion of a nonexamining physician by itself is insufficient to constitute substantial evidence to support rejection of the opinion of a treating or examining physician.  *Widmark,* 454 F.3d at 1066 n.2.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Disability opinions are reserved for the ALJ.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

On December 21, 2010, Dr. Antola, treating physician, completed a Functional Capacity Questionnaire in which she opined Plaintiff's impairment had lasted or could be expected to last at least 12 months.  Tr. 306.  Dr. Antola stated Plaintiff could stand/walk for three hours and sit for four hours in an eight-hour day.  She also found Plaintiff could frequently lift less than ten pounds and occasionally lift ten pounds.  Dr. Antola checked a box indicating Plaintiff's pain would frequently interfere with the concentration and attention needed to perform simple work tasks.  She also opined Plaintiff would miss more than three days of work per month.  She noted as symptoms Plaintiff's positive straight-leg raising tests, muscle weakness, and reduced range of motion.

On January 14, 2011, Dr. Antola completed a Medical Source Statement in which she noted she had seen Plaintiff for pain

20 - OPINION AND ORDER

management once every one-to-three months since late September 2010. Tr. 316-18. She diagnosed Plaintiff with radicular pain due to C5 cervical-spine degenerative changes and listhesis of lumbar spine per the MRI with symptoms of neck pain such as numbness and tingling radiation to the arms (right greater than left) and down the back with numbness in the legs. Dr. Antola estimated Plaintiff's pain level at eight out of ten. Tr. 316. She stated she was unable to completely relieve Plaintiff's pain with medication without unacceptable side effects. Dr. Antola recommended Plaintiff not sit continuously in a work setting and could carry less than ten pounds occasionally. As noted, Dr. Antola opined Plaintiff would be able to sit for three hours in and stand or walk for four hours in an eight-hour work day. Dr. Antola also found Plaintiff had significant limitations in repetitive reaching, handling, fingering and lifting. Tr. 317. She stated Plaintiff's condition did not allow him to hold his neck in a constant position, and he is unable to have a full-time competitive job that requires holding his neck in one position on a sustained basis. Dr. Antola noted Plaintiff would likely be absent from work more than three times a month as a result of his impairments and that his impairments had existed since at least the end of 2009. Tr. 318.

The ALJ did not mention Dr. Antola's December 2010 Functional Capacity Questionnaire. Tr. 20-28. He stated:

21 - OPINION AND ORDER

> Dr. Antola provided an opinion dated January 14,
> 2011, assessing the claimant as limited to work
> within the sedentary range of activity, but
> adding that he would be likely to miss work more
> than three days per month. [Citation omitted.]
> I note that Dr. Antola's assessment is based on
> less than a three-month treating history during
> which Dr. Antola noted she saw the claimant
> "once every 1-3 months for pain management"
> [citation omitted].  This indicates Dr. Antola's
> assessment is primarily based on the claimant's
> subjective reports, which are not entirely
> reliable.  This is apparent upon review of
> Dr. Antola's treatment notes, which reflect
> only slightly decreased strength on distal
> muscle groups and decreased strength on lateral
> aspect of the lower extremities and dorsum
> of the bilateral hands [citation omitted].
> Dr. Antola noted the claimant's symptoms were
> indicated for physical therapy, and prescribed
> anti-inflammatory and pain medication.

Tr. 26.

Although the ALJ asserts Dr. Antola's opinion was based on Plaintiff's subjective and unreliable complaints, the record reflects Dr. Antola examined Plaintiff five times between September 27, 2010, and January 14, 2011, and relied on her own examination and observations in addition to the September 2010 MRIs she ordered; the report of the October 31, 2010, emergency-room physician; and the November 2010 MRIs she ordered.  Tr. 238-39, 242-44, 296, 298, 301-02.  Moreover, the ALJ did not point to any evidence in the record that contradicts Dr. Antola's opinion that Plaintiff would miss more than three days of work each month due to his symptoms.  In addition, the Court has already concluded the ALJ erred when he did not identify substantial

evidence in the record to support his conclusion that Plaintiff's testimony was not fully credible.

**IV.  Lay-Witness Testimony**

The Court does not need to reach this issue based on the foregoing.

<u>**REMAND**</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)).  The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine whether a claimant is disabled under the Act.  *Id* at 1138.

Under the "credit-as-true" doctrine evidence should be credited and an immediate award of benefits directed when (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are not any outstanding issues

that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if such evidence were credited. *Id.* Thus, the reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but it provides the court with some flexibility when determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(*en banc*)).

Here the ALJ's rejection of the treating physician's opinion is erroneous for the reasons set out above. Moreover, the VE testified Plaintiff would be unable to maintain employment if Dr. Antola's opinion were credited. Tr. 362.

The Court has already concluded the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Antola, Plaintiff's treating physician, and for not fully crediting Plaintiff's testimony. Moreover, there are not any outstanding issues that must be resolved before a determination of disability can be made and the VE testified Plaintiff would be unable to maintain employment if Dr. Antola's opinion were credited.

Accordingly, the Court credits Dr. Antola's opinion, finds Plaintiff is disabled, and remands this matter for the calculation and award of benefits.

## CONCLUSION

For these reasons, the Court **REVERSES the decision of the Commissioner** and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g), for the immediately calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this 3rd day of February, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

25 - OPINION AND ORDER